IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIO WILLIAMS,

      Plaintiff,                            No. 2:11-cv-0638 GEB KJN P

     vs.

JASON T. HUFFMAN, M.D., et al.,

      Defendants.                  ORDER

_____/

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis, with an action filed pursuant to 42 U.S.C. § 1983. On December 22, 2011, defendant Huffman filed a motion to dismiss on the grounds that the amended complaint fails to state a cognizable claim under the Eighth Amendment, and that plaintiff's claim against defendant Huffman is frivolous pursuant to 28 U.S.C. § 1915(d).[1] For the reasons set forth below, the undersigned grants defendant Huffman's motion to dismiss, but grants plaintiff leave to file a second amended complaint.

////

---

[1] Defendants Traquina, Austin and Mefford filed an answer. (Dkt. No. 30.)

1

II. Plaintiff's Amended Complaint

      Plaintiff is proceeding on the amended complaint filed April 29, 2011, alleging that defendants were deliberately indifferent to plaintiff's serious medical needs by delaying the scheduling of plaintiff's back surgery. (Dkt. No. 8.) Plaintiff first saw defendant Huffman on February 9, 2009. Plaintiff contends defendant Huffman ordered x-rays of plaintiff's lumbar spine, and reviewed plaintiff's MRI report which "showed collapse of the disc space, dehydration of the intervertebral disc at L4-5, at L3-4, and loss of disc height at L2-3." (Dkt. No. 8 at 5.) Plaintiff alleges defendant Huffman told plaintiff that he needed surgery, and that plaintiff agreed to the surgery. (Id. at 6.) Plaintiff alleges he continued to complain to prison medical officials that he was in pain, and that he needed his back surgery. (Id.) Plaintiff alleges defendants were responsible to timely schedule plaintiff's back surgery, and their delay in timely scheduling the back surgery amounts to deliberate indifference to plaintiff's serious medical needs. (Id.)

III. Legal Standards - Motion to Dismiss

      Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir.1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

As mentioned above, a court may consider exhibits submitted with the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Significantly, a "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." Sumner Peck Ranch v. Bureau of Reclamation, 823 F. Supp. 715, 720 (E.D. Cal. 1993) (citing Durning, 815 F.2d at 1267.)

IV. Civil Rights Standards

> The Civil Rights Act under which this action was filed provides as follows:
> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976)

1 (no affirmative link between the incidents of police misconduct and the adoption of any plan or
2 policy demonstrating their authorization or approval of such misconduct). "A person 'subjects'
3 another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an
4 affirmative act, participates in another's affirmative acts or omits to perform an act which he is
5 legally required to do that causes the deprivation of which complaint is made." Johnson v.
6 Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

7 V.  Eighth Amendment Standards for Deliberate Indifference to Medical Needs

8       In order to state a claim for relief under the Eighth Amendment for inadequate
9 prison medical care, plaintiff must allege "deliberate indifference to serious medical needs." Jett
10 v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104
11 (1976)).  A medical need is serious if "the failure to treat a prisoner's condition could result in
12 further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v.
13 Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other
14 grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Deliberate
15 indifference is proved by evidence that a prison official "knows of and disregards an excessive
16 risk to inmate health or safety; the official must both be aware of the facts from which the
17 inference could be drawn that a substantial risk of serious harm exists, and he must also draw the
18 inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Mere negligence is insufficient for
19 Eighth Amendment liability.  Frost v. Agnos, 152 F.3d 1124, 1128 (1998).

20       Whether a defendant had requisite knowledge of a substantial risk of harm is a
21 question of fact and a fact finder may conclude that a defendant knew of a substantial risk based
22 on the fact that the risk was obvious. Farmer, 511 U.S. at 842.  While the obviousness of the risk
23 is not conclusive, a defendant cannot escape liability if the evidence shows that the defendant
24 merely refused to verify underlying facts or declined to confirm inferences that he strongly
25 suspected to be true. Id.  "Prison officials are deliberately indifferent to a prisoner's serious
26 medical needs when they deny, delay, or intentionally interfere with medical treatment." Hallett

v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted). Deliberate indifference may be shown by the way in which prison officials provide medical care, Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988), or "may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003). Deliberate indifference in the medical context may also be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need. Jett, 439 F.3d at 1096. However, a mere difference of opinion between a prisoner and prison medical staff as to appropriate medical care does not give rise to a § 1983 claim. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

VI. Plaintiff's Medical Records

Plaintiff provides the following medical records.[2] On January 22, 2009, plaintiff completed a Health Care Services Request Form stating he was having "excruciating pain" in his right leg. (Dkt. No. 1 at 23.) Plaintiff was seen by a Registered Nurse ("RN") on January 25, 2009, who noted that plaintiff was unable to ambulate due to leg and hip pain. (Id.) On January 26, 2009, plaintiff completed another Health Care Services Request Form, stating he had pain in his right leg registering 10 on a scale of 1 to 10 for the past two weeks. (Dkt. No. 1 at 25.) Plaintiff reported suffering pain, cramping and spasms, and was unable to walk. Plaintiff was prescribed Toradol for the pain. (Dkt. No. 1 at 26.)

On January 27, 2009, Dr. Nguyen requested that plaintiff receive a CT of his abdomen and pelvis. (Dkt. No. 1 at 30.) The request was marked urgent. (Id.) Dr. Nguyen also ordered that plaintiff receive an outpatient MRI due to acute pain in plaintiff's lower back and right hip, radiating to his right thigh, with muscle spasms since January 20, 2009. (Dkt. No. 1 at 31.) On January 28, 2009, plaintiff received an MRI of his lumbar spine and hip. (Dkt. No. 1 at 32.)

---

[2] These medical records were appended to plaintiff's original complaint. (Dkt. No. 1.)

1    Upon return from the MRI, plaintiff reported that he was unable to walk since
2 January 17, 2009, due to pain in his right hip and leg.  (Dkt. No. 1 at 33.)  Dr. Nguyen wanted the
3 MRI results faxed from Vacaville Imaging to CSP-Solano; staff contacted Vacaville Imaging and
4 they agreed to send the report.  On January 28, 2009, Dr. Steven Liston dictated the results of the
5 MRI, with the following impression:

> There is multilevel degenerative disc and facet arthropathy. . . .
> The most pronounced abnormalities are at L3-4, where there is
> lateral disc protrusion and disc space narrowing, along with
> ligamentous hypertrophy. . . .

9 (Dkt. No. 1 at 36.)

10    On January 29, 2009, Dr. Nguyen requested an urgent referral for plaintiff to see
11 an orthopedic surgeon based on the MRI.  (Dkt. No. 1 at 37.)  Dr. Nguyen specifically requested:
12 "please send MRI films with patient."  (Id.)  On January 29, 2009, Suzanne Silva, LVN, from
13 CSP-Solano outside medical scheduling, faxed an urgent request for plaintiff to be seen by Dr.
14 Huffman on February 9, 2009.  (Dkt. No. 1 at 38.)

15    The bottom of the January 29, 2009 form indicated that plaintiff was subsequently
16 scheduled to see Dr. Huffman on February 9, 2009, "for surgical planning after MRI.  *Please
17 send films."  (Dkt. No. 1 at 37.)

18    On January 31, 2009, plaintiff was offered a cane, but stated his crutches work
19 better than a cane.  (Dkt. No. 1 at 40.)  On February 3, 2009, a scheduling form was faxed
20 confirming plaintiff's February 9, 2009 appointment with Dr. Huffman.  (Dkt. No. 1 at 45.)  On
21 February 8, 2009, a medical code was called on plaintiff.  (Dkt. No. 1 at 40.)  Plaintiff
22 complained of acute lower back pain and impaired mobility.  Plaintiff was given an injection of
23 60 mg. of Toradol.  (Id.)

24    On February 9, 2009, plaintiff was seen by Dr. Huffman.  (Dkt. No. 1 at 47.)  Dr.
25 Huffman's handwritten notes Dr. Huffman "needs MRI to review" and "plan surgery if fits with
26 MRI."  (Id.)  Plaintiff walked from the appointment.  (Dkt. No. 1 at 48.)  On February 9, 2009,

plaintiff received a lumbar spine x-ray, and the radiologist concluded that plaintiff had degenerative disc disease at L3-4.  (Dkt. No. 1 at 49.)

In his written report, Dr. Huffman recorded plaintiff's present illness history as follows.  (Dkt. No. 1 at 50.)  Plaintiff hurt his back playing basketball.  After the injury, plaintiff experienced increasing pain on the right side of his back over the next 24 hour period, radiating into his thigh, leg and foot.  Plaintiff's pain was severe over the next two weeks, but then plaintiff received an injection of Toradol which helped somewhat.  Plaintiff is now managing the pain but still has significant pain, which causes difficulty in walking, and causes a limp.  Plaintiff cannot put weight on his right leg, and has difficulty sleeping.  Plaintiff's pain is relieved by sitting and resting and by medications, but is exacerbated by ambulating.  Motrin and Soma seemed to help.  Dr. Huffman's recommendations state:

> At this time, I would like to obtain the copies of the MRI films to review myself.  The patient appears to have L3-4 foraminal stenosis which I suspect would give more L3 nerve root symptoms and his symptoms actually present as more L4-K5 nerve root symptoms on examination and history.  If all the things are consistent, once I get a chance to personally review the MRI, I would consider decompression around the L4-L5 nerve roots.  I discussed this with the patient and he is interested in surgical intervention if that is the case.  At this time, my recommendation is to obtain the MRI.  If the MRI is consistent with the history and clinical examination, then proceed with surgical micro decompression.  If not, I will see the patient back for further examination.

(Dkt. No. 1 at 50.)

On February 9, 2009, Dr. Nguyen signed a follow-up request for plaintiff to see Dr. Huffman regarding disc space collapse.  (Dkt. No. 1 at 41.)  Dr. Nguyen noted that plaintiff did not have the MRI films taken on January 28, 2009, and said plaintiff should have a follow-up appointment within 14 days.  (Id.)  The form was faxed to Dr. Huffman's office on February 9, 2009.  (Id.)

On February 17, 2009, the radiologist's report from the CT scan of plaintiff's abdomen and pelvis noted:

> Marked degenerative disc changes at L2-3 and L3-4.  Moderate broad-based disc protrusion at L2-3 with some effacement of the ventral subarachnoid space  Moderate broad-based protrusion of the disc at L3-4, which in association with hypertrophy of the ligaments flave bilaterally and hypertrophic changes within the facet joints bilaterally, results in a mild to moderate spinal stenosis.  Both neural foraminal canals moderately narrowed at this level as well.  No significant disc disease at L4-5 or L5-S1.

(Dkt. No. 1 at 54.)  The radiologist concluded that plaintiff had moderate lumbar spondylosis at L2-3 and L3-4.  (Dkt. No. 1 at 55.)  "Spondylodiscitis at either of these two levels cannot be excluded."  (Id.)  On February 26, 2009, during a medical appointment for unrelated complaints, Dr. Nguyen noted "please check to see f/u appointment with Dr. Huffman for surgery."  (Dkt. No. 1 at 59.)

On March 10, 2009, Renee with the Napa Valley Orthopaedic Group sent a request for surgical authorization, appending a copy of Dr. Huffman's consultation report, and requested that prior to scheduling, a copy of the MRI film be sent to the forensic unit for review.  (Dkt. No. 1 at 60.)  At the bottom of this document, the following sentence is typed:  "4/29 Dr. Huffman reviewed and surgery info to Tina."  (Id.)

On March 19, 2009, plaintiff completed a health services request form noting he was in extreme pain in his right leg with numbness in his fingers, and requested his back surgery to relieve the pain in his hip, back and right leg, the spasms and cramps.  (Dkt. No. 1 at 61.)  Plaintiff was seen by an RN on March 19, 2009, and plaintiff reported that the "pain medication is not really working."  (Id.)  The RN phoned outside scheduling and spoke with Cindy, who reported that plaintiff was "one of the priority to go out" but still waiting per the PFS."[3]  (Id.)  The appointment "may be next month."  (Id.)

On April 30, 2009, Tina from the Napa Valley Orthopaedic Group faxed an outpatient scheduling form, noting plaintiff's May 11, 2009 appointment with Dr. Huffman, with

---

[3] While not clear, it appears "PFS" may refer to prison forensic scheduling.  (See Dkt. No. 1 at 73.)

a surgery date of May 21, 2009. (Dkt. No. 1 at 73.) The form also states that "patient didn't see hospitalist this day, didn't have pre op testing with him. Rescheduled to 5-19-09 at 1:00." (Id.)

Dr. Huffman's surgery scheduling form is not signed or dated, but the surgery is marked "elective," and described the surgery to be performed. (Dkt. No. 1 at 75.) The form notes a pre-operative appointment for May 11, 2009, and surgery on May 21, 2009. (Id.) The bottom of the form contains the following handwritten notes:

> 5-6 faxed prison.
> 4-29-09 Renee said ok to schedule.
> Dr. Reviewed MRI.   4/30 told Renee
> Seen 4-20-09 by hospitalist.  Faxed

(Dkt. No. 1 at 75.) On May 1, 2009, Dr. Huffman signed "Preadmission Surgery Orders," noting the May 21, 2009 surgery date, and the May 11, 2009 pre-operative appointment, and ordering certain pre-operative tests. (Dkt. No. 1 at 87.)

On May 6, 2009, Tina faxed a memo to CSP-Solano stating that plaintiff was scheduled for surgery, a right sided L3-4 and L4-5 hemilaminectomy, on May 21, 2009. (Dkt. No. 1 at 69.) Plaintiff was also scheduled to see Dr. Huffman for a pre-op visit on May 11, 2009. (Id.) On May 5, 2009, Dr. Traquina signed an authorization for plaintiff to attend the May 11, 2009 appointment. (Dkt. No. 1 at 70.) On May 5, 2009, Renee from Queen of the Valley Hospital faxed the scheduling form for plaintiff's May 11, 2009 appointment. (Dkt. No. 1 at 71.)

On May 11, 2009, Dr. Huffman saw plaintiff for the preoperative visit. (Dkt. No. 1 at 72.) Dr. Huffman had obtained the MRI film, and his review confirmed that surgical micro decompression on the right side of both the 3/4 and the 4/5 levels would be beneficial in improving plaintiff's pain. (Id.) After discussing the risks of surgery, plaintiff confirmed he wanted to have the surgery.

On May 19, 2009, Dr. Rohrer signed a follow-up request for plaintiff to have surgery for collapse of L3-L4 disc space. (Dkt. No. 1 at 79.) This form was faxed on May 19, 2009. (Id.) On May 12, 2009, Tina from Queen of the Valley Hospital faxed an outpatient

scheduling form noting plaintiff's May 19, 2009 appointment with the hospitalist; plaintiff was to have pre-op testing results with him. (Dkt. No. 1 at 80.) On May 19, 2009, Tina from Dr. Huffman's office faxed a memo to CSP-Solano noting plaintiff's surgery time was changed. (Dkt. No. 1 at 81.) On May 19, 2009, the hospitalist noted plaintiff was fit for surgery. (Dkt. No 1 at 82-83.) Upon return to CSP-Solano, the RN noted that plaintiff had no complaints of pain at that time. (Dkt. No. 1 at 85.) On May 20, 2009, plaintiff was instructed not to eat or drink anything after midnight due to surgery scheduled on May 21, 2009. (Dkt. No. 1 at 86.)

On May 21, 2009, plaintiff was admitted to the hospital with a diagnosis of lumbar stenosis/sciatica. (Dkt. No. 1 at 88.) Micro decompression surgery was performed on May 21, 2009. (Dkt. No. 1 at 90.) Plaintiff was discharged from the hospital on May 22, 2009. (Dkt. No. 1-1 at 1.) On June 1, 2009, plaintiff was scheduled for post-surgical consult, and on June 8, 2009, plaintiff was seen by Dr. Huffman. (Dkt. No. 1-1 at 3-4.) Plaintiff noted he was doing quite well and "notes relief of his leg symptoms and minimal back pain." (Id. at 4.) Dr. Huffman noted plaintiff had a "good gait with no tension signs in his lower extremities." (Id.)

VII. The Parties' Arguments

Defendant argues that during the February 9, 2009 appointment with plaintiff, defendant Huffman did not have the MRI films to review personally, as was his custom and practice. Defendant Huffman notes that the medical records demonstrate that defendant Huffman or his staff requested that the MRI films be sent both prior to the February 9 appointment, as well as on March 10, 2009. Once the MRI films were received, defendant Huffman contends the elective surgery was timely scheduled. Defendant argues that although plaintiff contends the surgery was urgent, neither he nor CSP-Prison Medical Services noted the surgery was urgent, and that the surgery was noted as elective on the surgery scheduling form. Defendant Huffman disclaims any role in either authorizing or scheduling the surgery. Defendant Huffman argues there is no evidence that he was deliberately indifferent, and that plaintiff's surgery was scheduled and proceeded in a more expedient manner than if a general referral patient with

1  private health care insurance sought care from defendant Huffman.

2  Plaintiff now contends that defendant Huffman had the MRI report on February 9,
3  2009, was aware of plaintiff's urgent condition, yet delayed the review of plaintiff's MRI films
4  until April 29, 2009.  Plaintiff denies ever talking to defendant Huffman about bringing the MRI
5  films, and claims plaintiff cannot bring such films; only prison medical officials and law
6  enforcement are responsible for transporting such films.  Plaintiff argues that because the surgery
7  was scheduled the day after defendant Huffman reviewed the MRI films, defendant Huffman's
8  delay in reading the MRI films delayed plaintiff's surgery, subjecting him to extreme pain and
9  suffering.  Plaintiff now claims he complained to prison officials and defendant Huffman
10 regarding his extreme pain and suffering while waiting for surgery.  Plaintiff also contends that
11 defendant Huffman's failure to timely schedule surgery, which plaintiff claims was urgent,
12 constitutes deliberate indifference.  Plaintiff argues that the MRI report and the x-rays that
13 defendant Huffman had on February 9, 2009, revealed plaintiff was suffering from a serious back
14 injury that required urgent treatment.

15 VIII.  Analysis

16 "When ruling on a motion to dismiss, [the court] accept[s] all factual allegations
17 in the complaint as true and construe[s] the pleadings in the light most favorable to the
18 nonmoving party."  See Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).  While the court
19 may consider documents plaintiff provided with the complaint, the court may not consider
20 defendant's declarations or other evidence submitted on a motion to dismiss.[4]  Moreover, where
21 a plaintiff appears without counsel in a civil rights case, the court must construe the pleadings
22 liberally and afford the plaintiff any benefit of the doubt.  Karim–Panahi v. Los Angeles Police
23 Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly
24 important in civil rights cases."  Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).

---

26  [4] Such evidence is more appropriately tendered at summary judgment.

In his opposition, plaintiff supplements his factual allegations against defendant Huffman. If plaintiff were merely alleging that his surgery was urgent, and defendant Huffman did not expedite the surgery, such an allegation might amount to nothing more than a disagreement with defendant Huffman's course of treatment. See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (stating that mere disagreement does not rise to the level of a violation); see also Gauthier v. Stiles, 2010 WL 4296663 (9th Cir. Oct. 29, 2010) (citing Frost, 152 F.3d at 1130 ("[A]lleged delays in administering pain medication, without more, do not constitute deliberate indifference.").

However, as argued in his opposition, plaintiff appears to claim that defendant Huffman's failure to earlier read the MRI films delayed plaintiff's back surgery, subjecting plaintiff to extreme pain and suffering, but also claims that his back surgery should have been scheduled in February of 2009. Thus, it is unclear whether plaintiff now alleges defendant Huffman was responsible for the delay from when the MRI films were sent to defendant Huffman until April 29, 2009, the date defendant Huffman reviewed the films, or whether plaintiff alleges it was deliberate indifference for defendant Huffman to wait for the MRI films when defendant Huffman had benefit of the MRI report from the radiologist on February 9, 2009.

The medical records provided by plaintiff demonstrate that after plaintiff saw defendant Huffman on February 9, 2009, Dr. Nguyen completed a follow-up request, noting plaintiff presented without the MRI films,[5] and requested plaintiff "should have [a] follow-up appointment [with defendant Huffman] within 14 days." (Dkt. No. 1 at 41.) Dr. Nguyen's February 9, 2009 request was not marked urgent, even though his prior requests for plaintiff to be referred to an outside specialist were marked urgent. (Id.) The documents also reflect that

---

[5] Just as plaintiff was not responsible for making sure the MRI films accompanied plaintiff to his February 9, 2009 appointment, defendant Huffman had to rely on prison officials to send the MRI films to him. Despite two notes in plaintiff's medical file, the MRI films were not sent with plaintiff on February 9, 2009, and defendant Huffman had not received the films by March 10, 2009. (Dkt. No. 1 at 60.)

12

defendant Huffman had not received the MRI films by March 10, 2009, when Renee from his office requested surgical authorization for plaintiff, and asked for a copy of the MRI films to be sent to the forensic unit for review. (Dkt. No. 1 at 60.) The documents provided by plaintiff do not indicate what date defendant Huffman received the MRI films, but one memo suggests defendant Huffman reviewed the MRI films on April 29, 2009. (Dkt. No. 1 at 60.) Defendant Huffman, in his motion, states he reviewed the MRI films on or about April 29, 2009. (Dkt. No. 49 at 6.)

These medical records demonstrate that defendant Huffman could not have reviewed the MRI films prior to March 10, 2009, because they had not yet been received. Therefore, from March 10, 2009, to April 29, 2009, one month and 19 days elapsed. As noted above, it is unclear whether this is the period of time plaintiff alleges defendant Huffman delayed plaintiff's surgery. In addition, plaintiff fails to allege that defendant Huffman's delay in reading the MRI films was the product of improper motive or intentional disregard for plaintiff's condition. Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) ("mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference"). Deliberate indifference is not an "inadvertent failure to provide adequate medical care." Helling v. McKinney, 509 U.S. 25, 32 (1993); Estelle, 429 U.S. at 103-04. "Delays and waiting to see medical specialists are not uncommon in the world outside prisons." Trillo v. Grannis, 2008 WL 2018339 (E.D. Cal. 2008).

Moreover, the Ninth Circuit has made clear that "[w]hile poor medical treatment will at a certain point rise to the level of a constitutional violation, mere malpractice, or even gross negligence, does not suffice." Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990); McGuckin, 974 F.2d at 1060 ("A finding that the defendant's neglect was an 'isolated occurrence' or an 'isolated exception,' . . . militates against a finding of deliberate indifference"). Also, the delay must have caused harm. See e.g., Daniels v. Evans, 2010 WL 1221798 (N.D. Cal. 2010) (plaintiff's allegations of pain while waiting six months for knee surgery more akin to

difference of medical opinion); Anthony v. Dowdle, 853 F.2d 741, 743 (9th Cir. 1988) (no more than negligence stated where prison warden and work supervisor failed to provide prompt and sufficient medical care); Wood, 900 F.2d at 1334, 1335 (affirming finding that 11-day delay in treatment for broken orthopedic pin in inmate's shoulder did not cause sufficient harm in part because "the only remedy immediately available was a prescription for painkillers.").

In addition, as an outside specialist in orthopedic surgery, it is not plausible that defendant Huffman was responsible for plaintiff's pain management. The medical records provided by plaintiff demonstrate defendant Huffman saw plaintiff only twice before plaintiff's back surgery: on February 9, 2009, and May 11, 2009. Defendant Huffman did not prescribe plaintiff pain medications on either February 9, 2009, or May 11, 2009.

Also, during the February 9, 2009 consultation, plaintiff explained to defendant Huffman that plaintiff's pain was severe over the two weeks following the injury, but that plaintiff received an injection of Toradol, which helped somewhat. (Dkt. No. 1 at 50.) Now, plaintiff was managing the pain, but still had significant pain, which caused a limp and difficulty walking. (Id.) Plaintiff's pain was relieved by sitting and resting and by medications, but was exacerbated by ambulating. (Id.) Plaintiff reported that Motrin and Soma seemed to help. (Id.) Plaintiff does not dispute these facts in his opposition to the motion to dismiss.

Although the February 9, 2009 consultation report shows that plaintiff was still suffering significant pain, it did not put defendant Huffman on notice that plaintiff was presently experiencing "extreme pain and suffering." In addition, this report demonstrates that medical providers at the prison were addressing plaintiff's pain.

However, plaintiff now claims that while waiting for back surgery, he "complained to prison officials and Dr. Huffman regarding his extreme pain and suffering on many occasions." (Dkt. No. 53 at 4.) Because the documents provided by plaintiff demonstrate plaintiff informed defendant Huffman on February 9, 2009, that plaintiff was managing his pain, and prison officials were treating his pain, plaintiff must provide additional factual allegations, if

he can, that demonstrate defendant Huffman was aware plaintiff was in extreme pain after February 9, 2009, yet was deliberately indifferent by failing to earlier review the MRI films, or failing to find plaintiff needed surgery on the basis of the MRI report defendant Huffman had on February 9, 2009. Plaintiff is cautioned that a mere negligent failure to timely review the MRI films is insufficient to demonstrate deliberate indifference. The defendant must purposefully ignore or fail to respond to the plaintiff's pain or medical needs. See McGuckin, 974 F.2d at 1060. If plaintiff cannot allege facts demonstrating defendant Huffman was deliberately indifferent on or after February 9, 2009, plaintiff may voluntarily dismiss defendant Huffman.

Finally, in his opposition, plaintiff alleges that defendant Huffman failed to timely schedule plaintiff's back surgery. However, the documents provided by plaintiff demonstrate that persons other than defendant Huffman were responsible for scheduling the surgery, and plaintiff alleges in his amended complaint that defendant Traquina was responsible for scheduling outside surgeries. In his opposition to the motion to dismiss, defendant Huffman confirms he was retained to provide orthopedic treatment, and is not responsible for scheduling back surgeries or other orthopedic treatments for plaintiff. (Dkt. No. 49 at 8.) Thus, because plaintiff's documents demonstrate defendant Huffman is not responsible for scheduling outside surgeries, defendant Huffman is entitled to dismissal of this claim, and plaintiff should not renew this claim in any second amended complaint.

With regard to defendant's claim that the surgery was elective, the only document provided by plaintiff noting the surgery was elective is a form that is not signed or dated. (Dkt. No. 1 at 75.) On a motion to dismiss, the court must take plaintiff's allegation that his surgery was urgently needed as true. Moreover, "the words 'elective surgery' are not a talisman insulating [defendants] from the reach of the Eighth Amendment. Each case must be evaluated on its own merits." Delker v. Maass, 843 F.Supp. 1390 (D. Or. 1994).

Finally, defendant's motion to dismiss plaintiff's amended complaint as frivolous, pursuant to 28 U.S.C. § 1915, is denied, based on the legal standards set forth above. See also

Farley v. Capot, 384 Fed. Appx. 685 (9th Cir. 2010) (approximate two month delay in surgery caused Farley unnecessary pain and further serious harm sufficient to state civil rights claim); Jett, 439 F.3d at 1097-98 (two month delay in receiving treatment for fractured thumb and nineteen month delay in consult with hand specialist, causing pain and diminished use of hand, sufficient to state deliberate indifference claim).

For all of the above reasons, defendant Huffman's motion to dismiss is partially granted, and plaintiff is granted leave to file a second amended complaint should he be able to allege facts demonstrating that defendant Huffman was deliberately indifferent to plaintiff's serious medical needs under the standards set forth above. Plaintiff should set forth specific facts as to what he told defendant Huffman concerning plaintiff's pain after February 9, 2009. If plaintiff contends the delay attributed to defendant Huffman constitutes deliberate indifference, plaintiff should specifically identify the time periods for which he alleges defendant Huffman is responsible, as well as the alleged harm caused by such a delay. Plaintiff should not renew his claim that defendant Huffman should have earlier scheduled plaintiff's surgery.

In addition, plaintiff is hereby informed that the court cannot refer to a prior pleading in order to make plaintiff's second amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files a second amended complaint, the original pleading no longer serves any function in the case. Therefore, in the second amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. In other words, plaintiff should also reallege his claims against defendants Traquina, Austin and Mefford. Plaintiff is not granted leave to add new defendants.

However, plaintiff need not re-submit the exhibits appended to the original complaint. Plaintiff may ask the court to attach them to the second amended complaint.

IX.  Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant Huffman's December 22, 2011 motion to dismiss (dkt. no. 49) is partially granted;

2. Plaintiff's amended complaint is dismissed;

3. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

a. The completed Notice of Amendment; and

b. An original and one copy of the Second Amended Complaint, if plaintiff chooses to amend.  Plaintiff's second amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, the Local Rules of Practice, and the instant order.  The second amended complaint must also bear the docket number assigned to this case and must be labeled "Second Amended Complaint."  Failure to file a second amended complaint in accordance with this order may result in the dismissal of defendant Huffman, and the court ordering that this action proceed on the amended complaint.

DATED: February 21, 2012

KENDALL J. NEWMAN  
UNITED STATES MAGISTRATE JUDGE

will0638.mtd

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIO WILLIAMS,

        Plaintiff,                  No. 2:11-cv-0638 GEB KJN P

     vs.

JASON T. HUFFMAN, M.D., et al.,    NOTICE OF AMENDMENT

        Defendants.

_____/

     Plaintiff hereby submits the following document in compliance with the court's order filed _____:

     _____     Second Amended Complaint or

     _____     Plaintiff elects to proceed on the amended complaint and voluntarily dismisses defendant Huffman.

DATED:

                                                                           _____
                                                                          Plaintiff